**Nos. 22-11082 & 22-11392**

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————————

CENTRAL BAPTIST CHURCH OF ALBANY, GEORGIA, INC.,

*Plaintiff/Appellee/Cross-Appellant,*

v.

CHURCH MUTUAL INSURANCE COMPANY,

*Defendant/Appellant/Cross-Appellee.*

———————————————

On Appeal from the United States District Court
for the Middle District of Georgia
Case No. 1:16-cv-00231-LAG

———————————————

## OPENING BRIEF OF APPELLANTS

*(Corrected Version)*

———————————————

Laurie Webb Daniel
WEBB DANIEL FRIEDLANDER LLP
75 14th Street NE
Suite 2450
Atlanta, GA 30309
T:(404) 795-5088
F: (678) 935-0178
laurie.daniel@webbdaniel.law

Peter H. Schmidt, II
TAYLOR, ODACHOWSKI,
SCHMIDT & CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, GA 31522
T: (912) 634-0955
F: (912) 638-9739
pschmidt@tosclaw.com

*Counsel for Appellant Church Mutual Insurance Company*

Case Nos. 22-11082 & 22-11392, *Central Baptist Church v. Church Mutual Ins. Co.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record for Defendant/Appellant/Cross-Appellee Church Mutual Insurance Company hereby submit the following Certificate of Interested Persons and Corporate Disclosure Statement pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26-1.1:

1. Bobbitt, Jonathan L.

2. Boyd, Nicholas

3. Central Baptist Church of Albany, Georgia, Inc.

4. Church Mutual Holding Company, Inc. (parent of Church Mutual Insurance Company, S.I.)

5. Church Mutual Insurance Company, S.I.

6. CM Regent Insurance Company

7. CM Select Insurance Company

8. CM Vantage Specialty Insurance Company

9. Crossland, Donna Linn

10. Daniel, Laurie Webb

11. Friedlander, Matthew

12. Gardner, The Honorable Leslie Abrams

13. Grunenwald, Christopher R.

14. Holland & Knight LLP

Case Nos. 22-11082 & 22-11392, *Central Baptist Church v. Church Mutual Ins. Co.*

15.    King, II, James Lory

16.    The King Firm

17.    McWherter, James Brandon

18.    McWherter Scott Bobbitt PLC

19.    Schmidt, II, Peter H.

20.    Scott, Clinton

21.    Taylor Odachowski Schmit & Crossland, LLC

22.    Thomas, Morrison Waite

23.    Webb Daniel Friedlander LLP

No publicly traded company or corporation has an interest in the outcome of this case.

/s/ *Laurie Webb Daniel*
Laurie Webb Daniel
WEBB DANIEL FRIEDLANDER LLP
75 14th Street NE, Suite 2450
Atlanta, GA 30309
T: (404) 433-6430
laurie.daniel@webbdaniel.law

Peter H. Schmidt, II
TAYLOR, ODACHOWSKI,
SCHMIDT & CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, GA 31522
T: (912) 634-0955
F: (912) 638-9739
pschmidt@tosclaw.com

*Attorneys for Defendant-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Church Mutual Insurance Company ("CMIC" or "Church Mutual") requests oral argument in both this appeal and the cross-appeal filed by Central Baptist Church of Albany, Georgia, Inc. Oral argument will assist this Court in understanding the history of this case, which is now nearly 10 years old, as well as the large cast of characters that play a part in this dispute – adjusters, roofers, estimators, and others. There are also numerous and at times overlapping legal issues which this Court must consider in both the main appeal and cross-appeal, and oral argument could help this Court better understand the issues.

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .....................................................- 1 -

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

STATEMENT OF JURISDICTION........................................................ vii

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE.................................................................1

    Nature of the Case ...........................................................................1

    Facts ...............................................................................................4

    Proceedings......................................................................................8

    Standard of Review.........................................................................14

SUMMARY OF ARGUMENT ...............................................................15

ARGUMENT .......................................................................................16

  I.    It was Error to Exclude CMIC's Misrepresentation Defense.....................16

    A.   The court effectively granted summary judgment on this issue.............16

    B.   CMIC did not waive the defense. ..........................................................23

  II.    The Damages Award Contravenes the Terms of the Policy......................25

    A.   The Policy does not Cover "Increased Construction Costs." ................26

    B.   The Proof of "Increased Construction Costs" is Deficient....................28

    C.   Adding Prejudgment Interest on top Yields a Double Recovery. ..........32

CONCLUSION ....................................................................................35

CERTIFICATE OF COMPLIANCE .......................................................36

CERTIFICATE OF SERVICE ...............................................................37

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*,

    288 Ga. 749, 707 S.E.2d 369 (2011) ...................................................26

*Bhanu Mgmt., Inc.,*

    161 F. Supp. 3d 1307 (S.D. Ga. 2015) ..................................... 19, 20, 21

*Camden Fire Ins. Ass'n v. Penick*,

    2 F.2d 964 (5th Cir. 1924) ..................................................................21

*Carithers v. Mid-Continent Cas. Co.,*

    782 F.3d 1240 (11th Cir. 2015) ..........................................................14

*Chandler v. Bombardier Cap., Inc.*,

    44 F.3d 80 (2d Cir. 1994) ...................................................................34

*Dupree v. Younger,*

    598 U.S. 729 (2023) ...................................................................... 24, 25

*Eastgate Assocs., Ltd. v. Piggly Wiggly Southern, Inc.*,

    200 Ga. App. 872, 410 S.E.2d 129 (1991) .........................................33

*Farmland Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,

    359 F. Supp. 2d 1144 (D. Kan. 2005) ................................................27

*Ficklin v. Hyundai Motor Am., Inc.*,

    272 Ga. App. 61, 611 S.E.2d 732 (2005) ...........................................29

*Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co.*,

    254 F.3d 987 (11th Cir. 2001) ...........................................................26

*Fiveash v. Allstate Ins. Co.,*

    603 Fed. App'x 773 (11th Cir. 2015) .................................................20

*Gasoline Prod. Co. v. Champlin Ref. Co.,*
   283 U.S. 494 (1931) ...........................................................................27

*Haman, Inc. v. Chubb Custom Ins. Co.,*
   No. 2:18-CV-01534-KOB, 2021 WL 4749795 (N.D. Ala. Oct. 12, 2021) .. 27, 32

*Hamer v. Neighborhood Housing Servs. of Chicago,*
   583 U.S. 17 (2017) ............................................................................24

*Hart v. State Farm Lloyds*,
   No. 3:22-CV-01367-N, 2024 WL 310539 (N.D. Tex. Jan. 25, 2024) ................30

*Hendrix v. Raybestos-Manhattan, Inc.,*
   776 F.2d 1492 (11th Cir. 1985) .........................................................28

*Johnston v. Companion Prop. & Cas. Ins. Co.*,
   318 F. App'x 861 (11th Cir. 2009) ......................................................28

*Junior v. Graham,*
   313 Ga. 420, 870 S.E.2d 378 (2022) ........................................... 32, 33

*Kroger Co. v. U.S. Foodservice of Atlanta, Inc.,*
   270 Ga. App. 525, 607 S.E.2d 177 (2004) ..........................................28

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) ...........................................................................31

*Marvin Nix Dev. Co. v. United Community Bank*,
   302 Ga. App. 566, 692 S.E.2d 23 (2010) ...........................................32

*Mee Indus. v. Dow Chem. Co.*,
   608 F.3d 1202 (11th Cir. 2010) .........................................................32

*Merch v. Allstate Fire & Cas. Ins. Co.,*
   No. 1:21-CV-5099-TCB, 2023 WL 6518866 (N.D. Ga. Sept. 20, 2023) ..... 21, 22

*Novak v. Gray*,
   469 F. App'x 811 (11th Cir. 2012) ....................................................29

*OSA Healthcare, Inc. v. Mount Vernon Fire Ins. Co.*,

   975 F.Supp.2d 1316 (N.D. Ga. 2013) ...................................................18

*Pendarvis v. American Bankers Ins. Co. of Florida*,

   354 F. App'x 866 (5th Cir. 2009) ........................................................30

*\*Perry v. State Farm Fire & Cas. Co.,*

   734 F.2d 1441 (11th Cir. 1984) .................................................. 16, 22

*Providence Piers, LLC v. SMM New England, Inc.,*

   No. 12-532S, 2015 WL 9699936 (D. R.I. Oct. 1, 2015)....................30

*Reed v. Auto–Owners Ins. Co.*,

   284 Ga. 286, 667 S.E.2d 90 (2008) ...................................................26

*ROW Equip., Inc. v. Terex USA, LLC*,

   No. 5:16-CV-60, 2019 WL 6698142 (S.D. Ga. Dec. 6 .......................29

*S. Realty Mgmt., Inc. v. Aspen Specialty Ins. Co.,*

   No. CIV.A1:08CV0572JOF, 2009 WL 1174661 (N.D. Ga. Apr. 28, 2009) .......22

*Sales v. State Farm Fire & Cas. Co.,*

   849 F.2d 1383 (11th Cir. 1988) ..........................................................17

*Sanford v. Crittenden Mem'l Hosp.*,

   141 F.3d 882 (8th Cir. 1998) ..............................................................31

*Sims v. Sec'y, Fla. Dep't of Corr.,*

   75 F.4th 1224 (11th Cir. 2023) ...........................................................25

*Standard Indus., Inc. v. Tigrett Indus., Inc.,*

   397 U.S. 586 (1970) ...........................................................................25

*Trias v. State Farm Fire & Cas. Co.,*

   No. 1:18-CV-00986, 2020 WL 3399915 (N.D. Ga. Mar. 16, 2020)...................19

*United States v. City of Warren*,

   138 F.3d 1083 (6th Cir. 1998) .................................................... 33, 34

*Ussery v. Allstate Fire & Cas. Ins. Co.,*

    150 F. Supp. 3d 1329 (M.D. Ga. 2015) ................................................................18

*Wagnon v. State Farm Fire & Cas. Co.,*

    146 F.3d 764 (10th Cir. 1998) ..............................................................................20

*West 32nd/33rd Place Warehouse Condo. Assoc., Inc.,*

    No. 22-cv-214008, 2023 WL 3276658 (S.D. Fla. May 5, 2023) ........................26

*Woods v. Independent Fire Ins. Co.,*

    749 F.2d 1493 (11th Cir. 1985) ........................................................ 16, 17, 18, 20

*Yates v. Pinellas Hematology & Oncology, P.A.,*

    21 F.4th 1288 (11th Cir. 2021) ............................................................................24

## Statutes

28 U.S.C. § 1291 ...................................................................................................... vi

28 U.S.C. § 1332 ...................................................................................................... vi

## Rules

Fed. R. Civ. P. 59 .......................................................................................... vi, vii, 14

Fed. R. Evid. 103(b) ................................................................................................24

Fed. R. Evid. 701 .....................................................................................................31

Fed. R. Evid. 701(c) .................................................................................................30

## Other Authorities

13A Couch on Insurance § 197:12 ...........................................................................20

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction based on 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States.

This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal seeks review of a final decision. The district court bifurcated the breach-of-contract and bad-faith claims asserted by Plaintiff Central Baptist Church of Albany, Georgia, Inc. ("Central Baptist"). On December 19, 2019, the jury rendered a verdict in Central Baptist's favor on the breach-of-contract claim and awarded $1,750,000. Doc. 338. On February 25, 2022, the district court granted Defendant CMIC's Motion for Summary Judgment as to the bad-faith claim. Doc. 564. The district court entered Judgment accordingly on March 1, 2022. Doc. 565. With that Judgment, the district court disposed of all parties' claims and terminated the action.

On March 29, 2022, CMIC filed a motion to alter the judgment or, in the alternative, for new trial pursuant to Fed. R. Civ. P. 59. (Docs. 567, 568). CMIC then timely filed a notice of appeal on March 31, 2022, from the adverse jury verdict and the Judgment. Doc. 573. On April 20, 2022, Central Baptist filed a Notice of Cross-Appeal from the summary judgment order on its bad-faith claim and the Judgment. Doc. 579.

The Notices of Appeal of both parties became effective on January 4, 2024, when the district court denied CMIC's post-trial motion.  (Doc. 573 (citing Fed. R. App. P. 4(a)(4)(B)(i)). On January 12, 2024, CMIC amended its notice of appeal to state that it was appealing from both the judgment and the denial of its Rule 59 post-trial motion. (Doc. 600).

After obtaining extensions of time in conformity with this Court's rules, CMIC timely files this opening appellant's brief under FRAP 28.1. The appeal is timely and ripe for adjudication.

## STATEMENT OF THE ISSUES

A reversal and remand is required due to these errors:

(1)     The district court erred in barring CMIC from presenting its affirmative defense based on Central Baptist's material misrepresentations and concealment during the claims process; and

(2)     The award of total roof replacement as measured by "increased cost of construction" (a) is contrary to the plain language of the parties' contract, (b) the award is not based on competent evidence, and (c) amounts to double-counting.

## STATEMENT OF THE CASE

### *Nature of the Case*

This case arises from a property insurance coverage dispute over the repair or replacement of Central Baptist's roofs following a 2014 hailstorm. After years of competing inspections, reports, and estimates between the experts hired by the two parties, CMIC ultimately refused to replace the roofs, as its insured, Central Baptist, had demanded. This litigation ensued when Central Baptist sued CMIC for breach of contract and bad faith.

The case dragged on for three years before the breach of contract claim went to trial in December 2019. In the meantime, and unbeknownst to CMIC, Central Baptist submitted a claim for roof replacement to its new insurance company,

AmTrust North America Insurance Company ("AmTrust"), after Hurricane Michael swept through Albany in October 2018. Despite this pending litigation with CMIC—where it was seeking a total roof replacement—Central Baptist also demanded that AmTrust pay for a total roof replacement.

Central Baptist never disclosed the AmTrust claim to CMIC, nor did it amend or update the Proof of Loss statements it had submitted to CMIC to reflect the new, lower estimates it received for the roof repair, and it never shared with CMIC the estimates, and reports regarding the AmTrust claim, all of which revealed that the claim Central Baptist had submitted to CMIC was seriously inflated. CMIC only by chance discovered the AmTrust information in mid-2019.

When it found out Central Baptist's secret, CMIC immediately sought limited discovery as to the AmTrust claim. Ultimately, the parties engaged in summary-judgment-like briefing on the issue of whether the jury could decide that Central Baptist's material misrepresentation / concealment of the truth about its expected roof replacement costs precluded a recovery from CMIC under the policy's misrepresentation clause. The district court ruled against CMIC on this issue and barred CMIC from presenting any evidence on its affirmative defense based on Central Baptist's misrepresentations and concealment. And, while CMIC had strenuously argued against such a ruling, going into trial it had to accept that the Court had withdrawn this issue from the jury's consideration. But this ruling

was highly prejudicial because, under Georgia law, CMIC was entitled to present evidence of misrepresentations made by a policy-holder during the claims process, as that would support a complete defense under the parties' contract.

With the misrepresentation issue eliminated by the district court, the case proceeded to trial, where the parties presented competing evidence as to whether Central Baptist's roofs actually sustained hail damage from the December 2014 storm and, if so, the amount of money needed to replace or repair Central Baptist's roof with material of "like kind and quality." Central Baptist's appraiser presented two alternative estimates for a total roof replacement, which varied based on the materials to be used. One was $1,377,131.03 and the other $1,480,310.71. The appraisal company also quoted $43,405.58 to perform interior repairs related to the roof damage. Based on these estimates, Central Baptist's pretrial order submission sought $1,420,536.61 in compensatory damages. And Central Baptist's pretrial order submission never claimed that this amount should be adjusted upward due to the increased costs of construction after the estimates were prepared.

But the jury ultimately awarded Central Baptist $1,750,000 on its breach of contract claim, 23.23% more than the highest amount previously demanded by Plaintiff. This $300,000+ increase in claimed damages was based on Plaintiff's closing argument where it asked the jury to bump up its earlier estimate of replacement cost based on "increased costs of construction. But the CMIC policy

3

expressly required that replacement costs be measured as of the time of the incident. Moreover, Central Baptist's new increased cost amount was wildly speculative with no support in competent trial evidence.

The *only* evidence as to "increased costs of construction" came from Austin Burton, the owner of the general contracting company hired by Central Baptist to provide a roof replacement cost estimate. Burton, however, testified only that, based on generalities like "tariffs," he would "guess" that construction costs increase by "4 to 8 percent" every year. But Burton was not qualified to give this opinion, which was but guesswork. In addition, the award reflects a double recovery when paired with the award of prejudgment interest.

### Facts

Central Baptist's property has five buildings – three of those buildings, including the sanctuary, were built around 1960 and have asbestos tile roofs. Doc. 335-1; Doc. 335-12 at 1; Doc. 353 at 102. The other two, constructed later, have asphalt shingle roofs. Doc. 335-12 at 1; Doc. 353 at 102. In December 2014, when the hail storm at issue occurred, Central Baptist was insured by CMIC Policy No. 0230690-657069 (the "Policy"). Doc. 333-2; Doc. 335-12 at 1-2.

***Policy Provisions.*** The Policy covered the insured buildings on a replacement cost basis. Doc. 333-3 at 5. And the Policy expressly stated that this item of damage means "Replacement Cost (without deduction for deprecation) *as*

4

*of the time of loss or damage.*" Doc. 333-3 at 13 (emphasis added). The policy further specified that CMIC would "not pay on a Replacement Cost basis" unless (a) the "property is actually repaired or replaced"; and (b) "[u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage." *Id.* The Policy also limited the costs to "comparable material," as well as the "amount you actually spend that is necessary to repair or replace the lost or damaged property." *Id.*

Regarding Central Baptist's duplicitous claim submission, the Policy stated in unequivocal language that the coverage provisions are void if its insured "*at any time*, intentionally conceal or misrepresent a material fact concerning, e.g., a "claim under this Coverage Part." Doc. 333-3 at 11 (emphasis added).

***The December 23, 2014, hailstorm.*** Central Baptist claims that, on December 23, 2014, a hailstorm swept through its property, severely damaging the roofs of its buildings. Doc. 335-12 at 2; Doc. 1. After Central Baptist reported possible damage from that storm to CMIC, Doc. 335-12 at 2, CMIC sent independent adjuster David Huggins to inspect the property. Doc. 354 at 32, 43-44. At first Huggins thought that the roof should be replaced, but he ultimately opined that it could be repaired at a cost of $2,300. Doc. 354 at 50, 52, 74. In August 2015, CMIC also obtained an opinion from a civil engineer, Jason Ball, who concluded that the roofs had not been damaged by the storm. *Id.* at 208, 210.

CMIC's adjusting agent ultimately determined that the roofs had sustained some wind damage that could be repaired, and it remitted a check for $1,302.99 (the cost to repair the damage, less a $1,000 deductible) as the full amount CMIC owed under the Policy. Doc. 354 at 41.

***Central Baptist's Proof of Loss statements.*** Unhappy with the proffered payment, Central Baptist hired a general contractor out of Nashville, Tennessee, to review the claimed damage. Its owner, Autin Burton, felt there was enough damage to warrant a full roof replacement. Doc. 335-5; Doc. 354 at 210, 216-18. Further, Burton, testified that the only acceptable modern equivalent of like "kind and quality" is heavy, expensive slate tiles. Doc. 354 at 225, 229. And, in July 2016, the general contractor provided Central Baptist with an estimate of $1,377,131.03 for a total roof replacement, which included new wooden decking for the sanctuary but did not include costs to repair interior damage. Doc. 335-7. So, in August 2016, Central Baptist submitted its original sworn proof of loss statement to CMIC, which claimed that the replacement cost for the exterior damage to the buildings was $1,136,508.80. Doc. 335-6.

Later, Central Baptist hired an appraisal company that estimated it would cost $1,480,310.71 to replace the roofs at that time, which was in May 2017. Doc. 333-22 at 32. And Central Baptist submitted an amended proof of loss statement in mid-2017, claiming that the replacement cost was $1,420,536.61. Doc. 335-8.

*The AmTrust Claim.* In October 2018, when Central Baptist was insisting that CMIC must pay nearly $1.5 million for a total roof replacement that had not been performed, Hurricane Michael swept through Albany. As CMIC later learned, after that storm Central Baptist submitted a claim to its new insurance company, AmTrust North America, also seeking a total roof replacement, ostensibly from damage sustained in the hurricane. Docs. 279-1, 279-2, 279-5. Central Baptist based this claim on a total replacement cost estimate it received from Strategic Roofing Solutions of Albany, Georgia. Doc. 354 at 235-38; Doc. 335-11. The estimate from Strategic, which Central Baptist submitted to AmTrust, which provided for a total replacement of the asbestos-tile roofs with high-end asphalt shingles, came to only $718,469.20 – *nearly half* the amount claimed on the amended Proof of Loss statement that Central Baptist submitted to CMIC. Doc. 335-11; Doc. 279 at 4.

For its part, AmTrust hired an independent adjusting firm, Sedgwick, to investigate Central Baptist's claim of damage from the hurricane. Doc. 216-4 at 8-28. Sedgwick retained independent adjuster Alan Taylor to insect the property and, based on his education and experience, Taylor did not see any evidence of hail damage to the roofs. Doc. 279-7 at 2, 5. David Keen, another consultant who inspected Central Baptist's roofs at Sedgwick's request, prepared an estimate that it would cost $152,809.20 to *repair* the roofs. Doc. 216-3 at 67-81; Doc. 182-2.

Central Baptist, however, never voluntarily provided any of these new replacement or repair reports to CMIC. Moreover, when Taylor asked Paul Carter, a church representative, about any previous insurance claims, Carter responded that there were none. *Id.* at 4. In other words, despite a continuing obligation to update its discovery responses and a contractual duty to disclose material facts pertaining to the claim it had submitted to CMIC, Central Baptist concealed the lower replacement costs it had adopted in its submission to AmTrust, and never corrected what it then knew was a misrepresentation in its claim submission to CMIC regarding the roof replacement cost.

### Proceedings

**The Pleadings.** On December 19, 2016, Central Baptist sued CMIC for damages not to exceed $1,500,000 for breach of the insurance contract and for bad faith. Doc. 1 at 12. CMIC's Answer included the affirmative defense of fraud, and stated that Central Baptist was not entitled to recover because it did not comply with the terms of the Policy. Doc. 6 at 2. In December 2017, the district court bifurcated the two claims. Doc. 41. Central Baptist's pretrial order submission later sought to recover for exterior damage to its roofs caused by the hail storm in the amount of $1,420,536.61. Doc. 567-1 at 7. This was the replacement cost value of the claim as represented by Central Baptist in its amended proof of loss claim submitted to CMIC in 2017. *See* Doc. 335-8.

8

***CMIC learns of the AmTrust claim.*** After discovery closed, CMIC by happenstance discovered critical evidence that had never been disclosed by Central Baptist – evidence of the 2018 insurance claim that Central Baptist submitted to its new insurer, AmTrust, after Hurricane Michael came through Albany. CMIC was shocked to learn that the AmTrust claim sought a total replacement of the same asbestos-tile roofs that were the subject of the CMIC claim—but at half the cost. Docs. 118, 118-1. CMIC found out about the AmTrust claim in 2019 when talking to a witness. Doc. 118-1 at 1-2. Significantly, Central Baptist had never disclosed this information to CMIC through either a claim amendment or supplemental discovery responses. Doc. 347 at 3. So, in June 2019, CMIC moved and was granted permission to reopen discovery on this limited issue. Docs. 118, 347, 203.

***The court orders briefing on the misrepresentation issue.*** The AmTrust claim came up at the November 20, 2019, pretrial conference, as the parties were discussing their objections to the deposition designations. Doc. 350 at 99. Defense counsel explained to the court "the fact that [Central Baptist] made the same damage claim or, rather, replacement of their entire roof to two different carriers." *Id.* at 103. And it explained that this evidence is admissible because a "material misrepresentation" is relevant to the breach-of-contract issue. *Id*. The district court then ordered additional briefing as to the relevance and admissibility of evidence pertaining to the AmTrust claim. *Id.* at 104.

CMIC briefed its defenses related to Central Baptist's misrepresentation and intentional concealment. Doc. 279. In that brief, CMIC pointed out that there was a jury issue as to whether Central Baptist's failure to comply with the misrepresentation provision voided the policy because, *inter alia*, (1) while Central Baptist never actually replaced its roofs after the 2014 hailstorm, it claimed a materially different total replacement cost for the roofs in the AmTrust claim submission; (2) Central Baptist insisted in its submission to CMIC that expensive slate was the only material of "like kind and quality," but then, in the AmTrust submission, accepted the fact that asphalt shingles are "like kind and quality" for a roof replacement; (3) Central Baptist never disclosed to CMIC the new replacement estimates it had adopted in the AmTrust submission; and (4) Central Baptist's failure to amend its earlier CMIC claim submissions despite its adoption of the much lower estimates in the AmTrust claim perpetuated material misrepresentations in the CMIC claims process. *Id.* at 3-4, 6; Docs. 279-1 through 279-7; Doc. 280.

Central Baptist, however, twisted the issue, arguing that its failure to tell AmTrust about the CMIC claim was not relevant because CMIC could not have been harmed by deception directed at AmTrust, i.e., its making of multiple claims for the same damage. *See* Doc. 284. That simplistic position, of course, has it backwards. It's the failure to tell CMIC about the AmTrust claim that is critical.

10

***The district court excludes all evidence on the misrepresentation defense.***

The district court held a hearing on the misrepresentation issue on December 3, 2019, less than two weeks before the trial, and fell for Central Baptist's argument. Doc. 297. The court held that "Church Mutual has not proffered evidence from which any reasonable jury could find that Central Baptist's failure to explicitly mention the 2014 storm damage claim against Church Mutual when filing and discussing the Hurricane Michael claim with AmTrust was an omission amounting to a material misrepresentation." Doc. 297 at 3-5. Indeed, the court focused entirely on whether Central Baptist had lied to AmTrust, not whether Central Baptist had deceived CMIC. *Id*. at 5 ("In fact, the evidence that has been proffered indicates that AmTrust was very much aware of the prior storm damage and pending claim."); *see also id.* (finding that the "material fact at issue is AmTrust's knowledge or lack of knowledge of the prior claim"). Accordingly, the district court largely excluded the evidence on the AmTrust issue except for a small portion that could be used for impeachment or the material needed for roof replacement. *Id*. at 7. And that exclusion deprived CMIC of the ability to prove Central Baptist's breach of the Policy's concealment / misrepresentation provision, which was a critical affirmative defense that should void Central Baptist's right to recover under the parties' contract. *See also id.* at 8.

***The trial of Central Baptist's breach of contract claim.*** The trial on Central Baptist's breach of contract claim took place over four days in December 2019. (Docs. 353-356). Central Baptist presented the replacement estimates it included in its CMIC claim, not the much lower AmTrust estimates. Docs. 335-7, 333-22. And Central Baptist presented no written estimate or expert testimony as to any increase in roofing construction costs in the Albany, Georgia, area. Rather, the sole evidence on this was Burton's lay guess:

> Q.    [W]e noticed that the pricing [of your estimate] was October of 2015. That's more than four years ago.
>
> A.    Uh-huh.
>
> Q.    What's the average annual price increase been since then?
>
> A.    I mean, with the, you know, tariffs on steel and oil and everything else, I would guess, you know, four to seven, eight percent.
>
> Q.    And is that based on your reasonable and rational perceptions as a general contractor in the area?
>
> [Defense counsel makes and then withdraws objection]
>
> THE WITNESS: We usually, on shingle roofs, for example, we usually have three to four increases per year depending on the economy and storms and supply and demand and everything that comes with it.

Doc. 354 at 233. There was a Rule 50(a) motion (directed verdict) based on the Policy's language on replacement cost as well as the speculative nature of the evidence, Doc. 355 at 3, but that motion was denied. Doc. 355 at 3.

***Central Baptist focuses on increased construction costs at closing.*** In its closing argument, Central Baptist's counsel stressed to the jury that:

> [W]hen you wait to pay on a claim like this, what happens to the cost of things? They get more expensive. These estimates were priced in 2016, 2015, and 2017. Things get more expensive. And under the estimating program, things go anywhere from 4 to 8 percent more expensive per year. And so it's now going to cost more to replace this roof than it did -- would have if they would have paid the money. Certainly they didn't expect this church to have this kind of money.

Doc. 356 at 155-56 (emphasis added).

Later, when referring to its earlier estimates, Central Baptist's counsel argued that "you have to add in how much more it's going to cost to do this now instead of when he did the estimate. And so the ultimate range ends up being between 1.65 million and 1.925 million. And that is the range that we're asking you to consider." *Id.* at 158-59 (emphasis added).

***The verdict, adjudication of the bad-faith claim, and judgment.*** The jury was ultimately swayed by this argument, and returned a verdict in Central Baptist's favor on its breach of contract claim and awarded $1.75 million in damages, plus pre-judgment interest. Doc. 338. This amount was 23.19% more than the $1.42 million Central Baptist was claiming just months prior in the pretrial order, based, presumably, on this last-minute, unsubstantiated "construction cost increase" closing argument.

Following an order in which the district court granted summary judgment to CMIC on the bad-faith claim (Doc. 564) on March 1, 2022, the district court entered judgment in CMIC's favor on the bad-faith and in Central Baptist's favor on the breach-of-contract claim. Doc. 565.

***The district court denies CMIC's post-trial Rule 59 motion.*** On March 29, 2022, CMIC filed its Motion to Alter the Judgment or, in the alternative, for a new trial on the issue of damages under Fed. R. Civ. P. 59. Doc. 568. Because the verdict amount was unsupported by competent evidence, contrary to the Policy language, and involved double counting, CMIC asked the district court to alter the verdict downward or order a new trial on damages. *Id*. But, on January 4, 2024, the district court denied CMIC's Rule 59 post-trial motion. Doc. 598.

### *Standard of Review*

The district court's exclusion of any evidence on the misrepresentation defense effectively granted summary judgment to Central Baptist on this affirmative defense. And summary judgment decisions are reviewed de novo. *Carithers v. Mid-Continent Cas. Co.,* 782 F.3d 1240, 1245 (11th Cir. 2015). Whether CMIC is entitled to a new trial on damages should be reviewed de novo because the interpretation of a contract, the sufficiency of the evidence, and the double counting issues are questions of law.

## SUMMARY OF ARGUMENT

The district court erred by depriving CMIC of a key affirmative defense based on misrepresentations made by Central Baptist during the claims process, and it also erred in its rulings upholding the damages award, which violates the terms of the insurance policy at issue, is not supported by probative evidence, and on its face includes double-counting. The undisputed record evidence demonstrates that the insured, Central Baptist, never informed CMIC about new damage estimates, new expert opinions, and an identical claim for roof replacement that evolved while this litigation – in which Central Baptist also seeks a total roof replacement – was pending. Despite submitting an estimate to the new insurer, AmTrust, for a fraction of what it sought from CMIC, the insured never updated its Proof of Loss statements or otherwise informed CMIC of this new and material information. CMIC's attorney found out about it through pure happenstance. The district court erred in holding that no reasonable jury could find a material misrepresentation or omission that voided the policy under these circumstances, and CMIC is entitled to a new trial so it may present this defense to a jury.

Second, during closing arguments Plaintiff asked the jury to award an entirely new category of damages – for increased construction costs – that it had never before mentioned or sought and which are, in fact, barred by the plain terms of the controlling insurance policy. The jury awarded those damages, but they

cannot be sustained because they contravene the parties' agreement, and also because there is insufficient evidence to support them, as they rest on the unsubstantiated and speculative opinion of a lay witness, opining on a matter requiring specialized knowledge. The damages award also represents an impermissible double recovery, when paired with the prejudgment interest that Plaintiff was also awarded.

## ARGUMENT

**I.    It was Error to Exclude CMIC's Misrepresentation Defense.**

**A. The court effectively granted summary judgment on this issue.**

Where an insurance policy contains a misrepresentation clause, as here, "a willful and intentional misrepresentation of material facts" will void the insurance contract. *Perry v. State Farm Fire & Cas. Co.,* 734 F.2d 1441, 1443 (11th Cir. 1984); *see also Woods v. Independent Fire Ins. Co.*, 749 F.2d 1493, 1495 (11th Cir. 1985). "A misrepresentation is material if it might affect [the insurer's] action in respect to . . . settlement or adjustment of the claim of the insured." *Perry*, 734 F.2d at 1443 (internal quotations and citations omitted). Whether a misrepresentation is material is typically a jury question "unless the evidence excludes every reasonable inference except that there was or was not a material misrepresentation." *Id.* at 1444. In other words, "materiality is a mixed question of law and fact that can be decided as a matter of law [only] if reasonable minds

could not differ on the question." *Woods,* 749 F.2d at 1496. The district court here erred in several respects in taking this decision away from the jury.

**First,** CMIC presented nine factual predicates for its misrepresentation / concealment defense in its trial brief. Doc 279. Only a handful of these concerned Central Baptist's statements *to AmTrust*, but others dealt with Central Baptist's actions in actively concealing the claim *from CMIC*, with whom it was in litigation, and its proffer of wildly different replacement estimates to each insurer. *Id.* Despite this, the district court at the hearing focused exclusively on whether Central Baptist's failure to mention the 2014 storm damage when filing a claim with AmTrust was an omission amounting to a material misrepresentation. Doc. 297 at 3-5. The district court thus overlooked several critical parts of CMIC's defense. For the reasons explained below, there was evidence from which a jury could at least infer that Central Baptist made willful and intentional factual misrepresentations or concealments *to CMIC,* voiding the policy. *See Sales v. State Farm Fire & Cas. Co.,* 849 F.2d 1383, 1386 (11th Cir. 1988) (finding that where insured misrepresented material facts by concealing his role in the fire for which he filed a claim, insured was entitled to rely on the policy's "fraud" provision to void the policy).

**Second,** it is undisputed that Central Baptist submitted an estimate for total roof replacement to AmTrust for an amount nearly *half* of the amount it submitted

on the proof of loss statements to CMIC ($1,377,131.03 to CMIC versus $718,469.20 to AmTrust). Doc. 279 at 4. This inflated amount on the proof of loss statements – which was never subsequently amended – was itself a material misrepresentation or concealment sufficient to support the defense.

Under Georgia law, insurers have a compelling interest in, and a right to, accuracy in the proof of loss. *Woods,* 749 F.2d at 1497. "There is no question that an inflated . . . property valuation submitted to an insurer in a proof of loss constitutes a material misrepresentation where it would affect the amount the insurer would be obligated to pay under the policy." *Ussery v. Allstate Fire & Cas. Ins. Co.,* 150 F. Supp. 3d 1329, 1343 (M.D. Ga. 2015); *see also OSA Healthcare, Inc. v. Mount Vernon Fire Ins. Co.*, 975 F.Supp.2d 1316, 1323 (N.D. Ga. 2013) (holding that "a statement made on a sworn proof of loss statement is material because if an insurer takes the statement at face value, then it would have been obligated to pay that amount").

Despite making the AmTrust claim, allowing no less than three additional experts on its roofs to inspect for roof damage, engaging with new roofers, obtaining additional estimates for roof replacement costs, and months spent pursuing the duplicative claim, Central Baptist never voluntarily disclosed the claim to CMIC. Central Baptist also failed to disclose that experts related to its Hurricane Michael claim opined that the roofs did not require replacement but

rather, at most, possibly $100,000 of repairs. Moreover, the damages Central Baptist sought for replacement of its roofs from alleged Hurricane Michael damages were a fraction of the damages it was seeking from CMIC.

The jury was entitled to hear about these other estimates in the context of their relevance to CMIC's defense and to decide whether Central Baptist made material misrepresentations on its Proof of Loss statements and/or intentionally concealed the new estimates and expert reports from CMIC sufficient to void the Policy. *See Liberty Corp. Cap., Ltd. v. Bhanu Mgmt., Inc.,* 161 F. Supp. 3d 1307, 1318-21 (S.D. Ga. 2015) (in case involving a nearly identical misrepresentation clause, finding that intentional misrepresentations were material and voided the policy where the insured "vastly misrepresented the amount of its insurance claim" and he never changed or amended the claim,); *Trias v. State Farm Fire & Cas. Co.,* No. 1:18-CV-00986, 2020 WL 3399915, at \*10 (N.D. Ga. Mar. 16, 2020) (on summary judgment, holding that whether misrepresentations were material and voided the policy was a jury question because "reasonable minds could differ" on materiality).

***Third,*** while the district court followed Plaintiff's lead in holding that there must be a knowing misrepresentation with the overt intent to deceive the insurance company in order for there to be an actionable defense, the district court ignored case law from this Circuit that "[a]n intent to defraud can be inferred when the

19

misrepresentation is made willfully and intentionally." *Fiveash v. Allstate Ins. Co.,* 603 Fed. App'x 773, 775 (11th Cir. 2015). For example, this Court in *Woods* addressed a case where the insured claimed that he did not intend to defraud the insurer because his intention in transferring the property to his mother was to put it beyond his wife's reach in divorce proceedings. *Woods,* 749 F.2d at 1496. But this Court rejected that argument because the fraud was "not lessened because the motive that induced it was something in addition to the possible injury to them that it might work." *Id.* Where the insured's misrepresentation or omission has the effect of concealing a defense from the insurance company, that is sufficient. *Id.; see also* 13A Couch on Insurance § 197:12 ("In determining whether an insured intended to defraud the insurer, an insured's actual motive in making a false statement or misrepresentation is irrelevant."); *Wagnon v. State Farm Fire & Cas. Co.,* 146 F.3d 764, 771 (10th Cir. 1998) (finding insurer was entitled to void the policy because where insured made misrepresentations knowingly and deliberately, the intent to deceive the insurer will be implied, even if made with a purpose other than defrauding the insurer). And, more recently, in *Liberty Corp.,* a federal district court in Georgia relied on this line of case law to hold that, where an insured submitted an inflated claim and demanded payment thereon without further amendment, the policy was void for misrepresentation, despite the insured's

insistence that the facts were not "indicative of fraudulent intent" because it expressed remorse after the fact. 161 F. Supp. 3d at 1320-21 (collecting cases).

At the very least, Central Baptist was under an obligation to supplement its discovery responses to disclose the new damages, claim, and repair estimates, which would have allowed CMIC to conduct an investigation rather than being ambushed by this information shortly before trial. A jury was entitled to consider whether an intent to defraud could be inferred from Central Baptist's actions here.

**_Finally,_** even accepting the argument that the insured must make the misrepresentation / omission with the explicit intent to defraud the insurer, whether a "claim was fraudulently or innocently made [is] a question of fact peculiarly within the province of the jury." *Camden Fire Ins. Ass'n v. Penick*, 2 F.2d 964, 965 (5th Cir. 1924); *Merch v. Allstate Fire & Cas. Ins. Co.,* No. 1:21-CV-5099-TCB, 2023 WL 6518866, at *11 (N.D. Ga. Sept. 20, 2023) (even though insureds may have expanded scope of the appraisal through a misunderstanding, rather than an intentional attempt to defraud the insurer, determining that the court need not make that determination because "[t]he question of intent to deceive or not to perform is in all cases the dominion of the factfinder").

Here, there was evidence pointing to Central Baptist's devious intent – including Taylor's testimony that Carter affirmatively told him there were no other pending claims, the fact that Central Baptist pursued claims seeking identical relief

from two different insurers for nearly a year without disclosing the same to CMIC, and its failure to amend and update its Proof of Loss statements. The misrepresentation clause prohibits the insured from making misrepresentations or omissions "at any time." According to Paul Carter, the church only wanted "one roof" and it hoped the insurers would work together to effect that relief, but that is not consistent with Central Baptist's actions of concealing the AmTrust claim from CMIC. In similar cases, federal courts have not only allowed the defense to be adjudicated by the jury, they will sometimes outright grant summary judgment *to the insurance company*. *See Merch.,* 2023 WL 6518866, at *11 (allowing claim to go to the jury); *S. Realty Mgmt., Inc. v. Aspen Specialty Ins. Co.,* No. CIV.A1:08CV0572JOF, 2009 WL 1174661, at *3 (N.D. Ga. Apr. 28, 2009) (granting insurer's motions for summary judgment, finding that insured's concealment of a pending sale of the property on its proof of loss statement violated policies and barred plaintiffs' recovery).

The relevant standard in assessing this defense is heavily weighted in favor of jury resolution – it must go to the jury "unless the evidence *excludes every reasonable inference* except that there was or was not a material misrepresentation." *Perry,* 734 F.2d at 1444 (emphasis added). There was sufficient evidence of material misrepresentations and/or concealment on Central Baptist's part to send this issue to the jury. Certainly, reasonable minds could differ

on whether the omissions were material. Thus, the district court erred in holding that "no reasonable jury" could have ruled in Church Mutual's favor on the basis of the proffered (and excluded) evidence. The district court erred in effectively granting summary judgment in Plaintiff's favor on this defense, which ruling allowed Central Baptist to present to the jury a damages claim that was incurably infected by deceit and patently contrary to the policy provisions. This undisputed record evidence of deceit on the part of the insured requires a new trial.

**B. CMIC did not waive the defense.**

At the close of all evidence, Plaintiff's counsel raised the issue of Church Mutual's affirmative defenses and argued that, as to fraud, "[t]here's been no assertion whatsoever that the church committed fraud or misrepresented anything to Church Mutual." Doc. 356 at 102. The court asked defense counsel if it was "relying on any of these affirmative defenses." *Id*. Knowing that the issue of material misrepresentation had been rejected by the district court before trial in a definitive ruling, defense counsel replied in the negative and that the defenses had been "withdrawn." *Id*. Given the history of proceedings and the context in which this issue arose, the record shows that Church Mutual's counsel had to have meant that the defense had been withdrawn *by the court*, as there is absolutely nothing in the record showing that Church Mutual had willingly withdrawn this affirmative defense, which they fought so hard for.

For a waiver to be effective, there must be an intentional and voluntary relinquishment of a known right. *Hamer v. Neighborhood Housing Servs. of Chicago,* 583 U.S. 17, 20 n.1 (2017). Here, the material misrepresentation / concealment issue had been fully briefed, the district court held a hearing on it, and then decided the issue adversely to Church Mutual. Knowing that the court's decision was final and that further argument was futile, defense counsel did not rehash their prior arguments when asked if it was asserting that defense— there is no evidence of an intentional and voluntary relinquishment of this right. *See Yates v. Pinellas Hematology & Oncology, P.A*., 21 F.4th 1288, 1297 (11th Cir. 2021) (once the district court has made a definitive evidentiary ruling on the record, a party need not renew its objection to preserve a claim of error for appeal (citing Fed. R. Evid. 103(b)). Indeed, the district court's pretrial ruling had excluded all evidence that could support the defense, and so Church Mutual had nothing to present to the jury on this issue.

Of course, the court's ruling, akin to a summary judgment ruling that no reasonable jury could find the alleged misrepresentations to be material, was not affected by any evidence introduced at trial, because the defense itself and all supporting evidence was excluded. Under these circumstances, the issue has been properly preserved and can be reviewed by this Court on appeal. *See Dupree v. Younger,* 598 U.S. 729, 735 (2023) (legal issues resolved on summary judgment

24

that are not factual, sufficiency-of-the-evidence disputes carried forward into trial are reviewable on appeal, even if not preserved in post-trial motions, because those conclusions are not "superseded" by later developments in the litigation); *Sims v. Sec'y, Fla. Dep't of Corr.,* 75 F.4th 1224, 1227 (11th Cir. 2023) (explaining that the rule in *Dupree* "makes sense [because] nothing in the Federal Rules of Civil Procedure or the Supreme Court's precedents requires a party to ask the district court to reconsider a legal argument it already rejected"); *Standard Indus., Inc. v. Tigrett Indus., Inc.,* 397 U.S. 586, 587-88 (1970) (Black, J., dissenting) (noting that appellate courts may consider even new arguments raised on appeal where "assertion of the issue earlier would have been futile").

## II.    The Damages Award Contravenes the Terms of the Policy.

At the trial – notwithstanding the fact that the estimates it submitted were nearly double the Strategic Roofing estimate that it submitted to AmTrust – Central Baptist asked the jury to award a further inflated amount based on the increased costs of construction as of the time of trial, rather than the replacement cost at the time of the incident, as required under the Policy. This measure of damages, additionally, was not based on any competent, admissible evidence. They were awarded by the jury purely based on a comment from Plaintiff's counsel at closing argument. This was not only error, it seriously prejudiced Church Mutual's right to a fair trial.

25

Accordingly, this Court should reverse and remand with instructions for the district court to either order a remittitur or hold a new trial as to damages.

**A. The Policy does not Cover "Increased Construction Costs."**

The Policy unequivocally states that replacement cost must be calculated as of the date of the event that caused the damage. (Doc. 333-3 at 13 (providing that, "we will determine the value of the Covered Property in the event of loss or damage as follows: At Replacement Cost (without deduction for depreciation) **as of the time of loss or damage** . . . .") (emphasis added)). Central Baptist, however, did not provide any trial evidence of the replacement cost as of that date.

If the language of an insurance policy is clear and unambiguous, as here, it must be enforced according to its terms. *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 288 Ga. 749, 707 S.E.2d 369, 371 (2011); *Reed v. Auto–Owners Ins. Co.*, 284 Ga. 286, 667 S.E.2d 90, 92 (2008). And courts may not "rewrite contracts or add meaning to create an ambiguity, and an ambiguity is not invariably present when a contract requires interpretation." *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co.*, 254 F.3d 987, 1003-04 (11th Cir. 2001).

And multiple courts within and outside this Circuit have held that policy language mandating valuation at "the time of loss or damage" means just that – repair or replacements must be valued as of the time of the loss. *See West 32nd/33rd Place Warehouse Condo. Assoc., Inc.*, No. 22-cv-214008, 2023 WL

26

3276658, at *5 (S.D. Fla. May 5, 2023) (construing policy with similar language, holding that "the plain language of the policy provides that repairs and replacements are to be valued at the time of loss" and that "[d]ate of loss provisions must be enforced regardless of which party would benefit from the provision's application"); *Haman, Inc. v. Chubb Custom Ins. Co.,* No. 2:18-CV-01534-KOB, 2021 WL 4749795, at *6 (N.D. Ala. Oct. 12, 2021) (rejecting party's attempts to add on "natural breach" damages to a policy that provided for replacement-cost-value damages because the insurance policy determines the measure of damages to be recovered and recovery is limited to those terms); *Farmland Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 359 F. Supp. 2d 1144, 1148 (D. Kan. 2005) (enforcing contract provision providing for valuation of "market value [] at the time and place of the loss," even though the product's price fluctuated*); see also Gasoline Prod. Co. v. Champlin Ref. Co.,* 283 U.S. 494, 498-99 (1931) (damages for contract breach undeterminable without knowing contract's terms).

Central Baptist thus failed to adhere to the parties' contractual requirement that replacement cost must be determined based on costs at the time of the 2014 storm event, mandating a reversal of the damages award, with a remand for a new trial as to damages.

the correlation between this guess and what a new estimate would actually be.  In short, Burton's testimony was nothing more than a lay opinion based on pure guesswork and speculation.

Based on this flimsy and unsupported evidence, the jury returned a $1.75 million award, higher even than what Plaintiff stated it was seeking in the pretrial order. In Georgia, a plaintiff's evidentiary burden is to "produce evidence which would furnish the jury data sufficient to enable them to estimate with reasonable certainty the amount of the damages" and the determination of the measure of damages "cannot be left to speculation, conjecture, and guesswork." *ROW Equip., Inc. v. Terex USA, LLC*, No. 5:16-CV-60, 2019 WL 6698142, at *5 (S.D. Ga. Dec. 6, 2019) (citing *Ficklin v. Hyundai Motor Am., Inc*., 272 Ga. App. 61, 611 S.E.2d 732, 734 (2005)). Pretermitting the failure to assert a claim for increased construction costs until closing argument, it was Central Baptist's burden to present evidence, beyond speculation, of increased construction costs to the jury, and it failed to do so. *See Novak v. Gray*, 469 F. App'x 811, 818 (11th Cir. 2012) (reversing the district court's denial of remittitur and remanding for the district court to reduce the award to the maximum amount established by the evidence – which was the outer limit of damages claimed by the party in his sworn testimony).

The district court erroneously held that this testimony was admissible on the ground that it was based on Burton's "particularized knowledge gained from his

own personal experiences as a contractor in the Albany area." Doc. 598 at 12.

First, Burton was a contractor based out of Nashville, not Albany. Moreover, this testimony fell outside of a permissible lay opinion because it was plainly and facially based on technical or specialized knowledge under Rule 702. Fed. R. Evid. 701(c) (lay witnesses may not testify regarding anything "based on scientific, technical, or other specialized knowledge within the scope of Rule 702"). Numerous other courts have held that estimates for repair, including the cost of *future repairs*, are topics requiring specialized knowledge and expert testimony, a line of caselaw that the district court entirely ignored. *See, e.g., Pendarvis v. American Bankers Ins. Co. of Florida*, 354 F. App'x 866, 869 (5th Cir. 2009) (holding estimate for repair costs for mobile home "require[s] specialized knowledge of construction and repair work" and is properly viewed as expert, not lay, testimony); *Hart v. State Farm Lloyds*, No. 3:22-CV-01367-N, 2024 WL 310539, at *2 (N.D. Tex. Jan. 25, 2024) ("[E]xpert testimony is 'essential' for proving the reasonable costs of reconstruction."); *Armstead v. Allstate Property & Cas. Ins. Co.,* 1:14-cv-586, 2016 WL 928722, *5 (N.D. Ga. Mar. 11, 2016) (explaining witnesses' "opinions on damage, repair and restoration are expert opinions subject to Rule 702," including repair estimates); *Providence Piers, LLC v. SMM New England, Inc.,* No. 12-532S, 2015 WL 9699936, *7 (D. R.I. Oct. 1, 2015) (explaining that "fact testimony by a builder or repairer is generally limited

to observations of damaged property and to the cost of work actually performed while estimating the cost of future work is generally the subject of expert testimony").

And Burton's opinion was not based on his own perception, as required by Fed. R. Evid. 701 – for example, it was not based off of an amended Xactimate estimate or against a comparison of similar work in the Albany area. It was, as he admitted, a "guess." It is ironic, too, that, even had it been offered as the opinion of an expert witness, Burton's "guess" would have been subject to exclusion for failure to have a sound basis or methodology. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999). And yet, the district court upheld its inclusion as a speculative lay opinion.

What's more, Central Baptist failed to supplement its discovery responses with this new damages theory as required by Fed. R. Civ. P. 26 – which includes its damages theories and calculations; indeed, Church Mutual did not learn of this damages theory until the end of trial. "Surprise during trial, by major variance in theory of recovery or defense, undisclosed until after the trial is underway, is a long-established ground for granting a new trial motion." *Sanford v. Crittenden Mem'l Hosp.*, 141 F.3d 882, 886 (8th Cir. 1998) (collecting circuit cases). Here, an entirely new theory of damages is sprung upon counsel *at closing arguments*, and the district court's failure to exclude this novel new damages theory severely

31

prejudiced Church Mutual. *See Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010) (affirming exclusion of party's "loss of goodwill" damages theory because they were no disclosed until the pretrial statement); *Haman*, 2021 WL 4749795, at *4 (prohibiting plaintiff from introducing new damages theory based on eleventh-hour assertion that the fire damaged newly claimed buildings). The district court discounted *Mee* and *Haman* because Church Mutual here did not object to Burton's testimony "in a timely manner." Doc. 598 at 6, but for the reasons discussed below, this Court can and should still consider this issue.

As a result of this seriously prejudicial error, Church Mutual is entitled to a remittitur or a new trial on the issue of damages.

### C. Adding Prejudgment Interest on top Yields a Double Recovery.

The district court rejected Church Mutual's argument that, by receiving both prejudgment interest and the increased construction costs occasioned by the delay, Central Baptist received an impermissible double recovery. This was error.

Georgia public policy "generally prohibits a plaintiff from a double recovery of compensatory damages." *Junior v. Graham,* 313 Ga. 420, 424, 870 S.E.2d 378, 382 (2022). "[A] plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole." *Id*. at 424-25, 870 S.E.2d at 382; *see also Marvin Nix Dev. Co. v. United Community Bank*, 302 Ga. App. 566, 568, 692 S.E.2d 23 (2010) ("While a party

may pursue inconsistent remedies, he is not permitted a double recovery of the same damages for the same wrong. He is entitled to only one satisfaction of the same damages, in either contract or tort." (citation and punctuation omitted)). The Georgia Supreme Court has instructed that, when determining whether two forms of damages constitute an impermissible double recovery, the court must look to the purpose motivating the damages. *Id.* at 425, 870 S.E.2d at 382-83.

Turning to the damages awarded here, Georgia contract law counsels that an award of damages should put the injured party in the position it would have had but for the breach. *Eastgate Assocs., Ltd. v. Piggly Wiggly Southern, Inc*., 200 Ga. App. 872, 874-75, 410 S.E.2d 129, 132 (1991). But the cases that the district court relied on are both out of Circuit and inapposite because they do not deal with increased construction costs and prejudgment interest serves the same purpose in breach of contract cases. For example, in the Sixth Circuit case cited by the district court, a Title VII discrimination case, the court concluded that the consumer price index (CPI) may not be used to calculate prejudgment interest on an individual claimant's back pay award because the CPI only accounts for the rate of inflation and prejudgment interest compensates plaintiff for the lost use of their money. *United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998). Critically, the Sixth Circuit noted that the "purpose of awarding prejudgment interest under Title VII" was to compensate victims both for the time value of the lost money and

the effects of inflation and that, as a policy reason, the victims of discrimination should not be penalized for delays in the judicial process, and the discriminating employers should not reap the benefits of such delays. *Id.* The Second Circuit case cited by the district court, another backpay award case, used a similar rationale. *Chandler v. Bombardier Cap., Inc.*, 44 F.3d 80, 83 (2d Cir. 1994) (explaining that the purpose of prejudgment interest "in a wrongful termination case is to compensate a plaintiff for the loss of use of money that the plaintiff otherwise would have earned had he not been unjustly discharged").

But this is a breach of contract case, and so the policy considerations at issue in a discrimination or wrongful termination case are not at issue. Rather, the goal of damages in this case is to return the injured party to the status quo ante. And so here, assuming a breach, the Policy provided that the insured could get replacement cost value at the time of the loss or damage. Putting aside the fact that Central Baptist submitted estimates prepared well after that date, they were then awarded both the increased cost from the delay and the prejudgment interest – both at about 7% per year. Both measures of damages compensated Central Baptist for the same thing – the delay between the time of the estimate and the time of trial. Under these circumstances, allowing Plaintiff to recover both ran afoul of Georgia's prohibition against double recoveries.

## CONCLUSION

For the foregoing reasons, the Court should reverse and remand for a new trial or, at the very least, remand with instructions ordering a remittitur or granting a new trial as to the issue of damages.

Respectfully submitted this 30th day of May, 2022.

**WEBB DANIEL FRIEDLANDER LLP**

/s/ *Laurie Webb Daniel*
Laurie Webb Daniel
Georgia Bar No. 204225
75 14th Street NE
Suite 2450
Atlanta, GA 30309
T: (404) 433-6430
laurie.daniel@webbdaniel.law

Peter H. Schmidt, II
TAYLOR, ODACHOWSKI,
SCHMIDT & CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, GA 31522
T: (912) 634-0955
F: (912) 638-9739
pschmidt@tosclaw.com

*Counsel for Appellant*
*Church Mutual Insurance Company*

## CERTIFICATE OF COMPLIANCE

1.       This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(A) because it contains 9413 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. Rule 32-4.

2.       This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Times New Roman 14-point font.

This 30th day of May, 2024.

/s/ *Laurie Webb Daniel*
Laurie Webb Daniel
75 14th Street NE
Suite 2450
Atlanta, GA 30309
T: (404) 433-6430
laurie.daniel@webbdaniel.law

*Counsel for Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2024, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Eleventh

Circuit by using the CM/ECF system, which system thereby electronically served

the same on Appellees' counsel of record:

James Brandon McWherter
Clinton H. Scott
Jonathan L. Bobbitt
MCWHERTER SCOTT BOBBITT PLC
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
brandon@msb.law
clint@msb.law

James L. King II
THE KING FIRM
1603 U.S. Hwy 41 N
Tifton, GA 31794
JL@KingTrialLaw.com

/s/ *Laurie Webb Daniel*
Laurie Webb Daniel
75 14th Street NE
Suite 2450
Atlanta, GA 30309
T: (404) 433-6430
laurie.daniel@webbdaniel.law